UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID L. GIVENS | ) | |
| | ) | |
| v. | ) | No. 3:09-0888 |
| | ) | JUDGE CAMPBELL |
| TENNESSEE FOOTBALL, INC. | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is Defendant's Motion To Dismiss (Docket No. 6), to which the Plaintiff has filed a Response (Docket Nos. 21, 22). For the reasons set forth herein, Defendant's Motion To Dismiss (Docket No. 6) is GRANTED.

II. Factual and Procedural Background

Plaintiff David L. Givens brought this diversity action against Tennessee Football, Inc., operating under the name of the Tennessee Titans, a member of the National Football League ("NFL"). (Complaint, at ¶¶ 1-2 (Docket No. 1)). Plaintiff alleges that the Defendant committed the torts of outrageous conduct and negligent and/or intentional infliction of physical and emotional injury, and performed its contractual obligations in bad faith, by withholding certain medical information regarding Plaintiff's knee. (Id., at ¶¶ 13-15).

Plaintiff alleges that he entered into an NFL Player Contract with the Defendant on or about March 14, 2006, under which the parties agreed that the Plaintiff would play football for the Defendant for five seasons and the Plaintiff could earn in excess of twenty-five million dollars. (Id., at ¶ 4). Plaintiff alleges that "[a]t or about the time the contract was being negotiated," the Plaintiff underwent a complete physical examination to determine his fitness to

engage in professional football and to determine his capacity to fulfill the terms of the proposed contract. (Id., at ¶ 5). The physical examination, according to the Plaintiff, was performed by an orthopedic surgeon who was acting as an independent contractor and who did not undertake to treat or advise the Plaintiff, but rather to report his findings to the Defendant. (Id.) Plaintiff alleges that Defendant was notified by the physician on March 13, 2006 that the Plaintiff has "a large defect on the medial femoral condyle" of his left knee and "may need surgery at some point." (Id., at ¶ 6). According to the Plaintiff, the physician further stated that he was concerned the Plaintiff "will miss some time, not be able to go through all of training camp, and may not be able to make a full 16-game season." (Id.)

Plaintiff alleges that no one from the Defendant organization notified him of the physician's findings. (Id., at ¶ 7). Consequently, Plaintiff contends, he continued to play football until he was injured in a game on November 12, 2006. (Id., at ¶ 9). Plaintiff alleges that an x-ray of his knee revealed that the "previously-known lesion and defect in his knee had crumbled." (Id.) According to the Plaintiff, he never played football again. (Id.) The Complaint indicates that Plaintiff learned of the results of the earlier physical examination when the Defendant provided his medical records to him in February, 2009 during an arbitration to recover future payments from the Defendant pursuant to a Collective Bargaining Agreement ("CBA") between the Defendant and the NFL Players Association. (Id., at ¶ 10).

III. Analysis

A. The Standards for Considering a Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter

2

Township of Comstock,___ F.3d ___, 2010 WL 307899, at *3 (6th Cir. Jan. 28, 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009)). "'A legal conclusion couched as a factual allegation,'" however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

B. Federal Labor Law Preemption

Defendant argues that Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] The Supreme Court has interpreted the language of Section 301 to require federal preemption of state law claims when those claims are created by, "inextricably intertwined" with, or "substantially dependent" on, consideration of the terms of a labor contract. Mattis v. Massman, 355 F.3d 902, 905 (6th Cir. 2004)(citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1988) and Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972(1957)). The Court has based its reasoning on the need for uniform federal law in the interpretation of collective

---

[1] Section 185(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

3

bargaining agreements. Id. Preemption has been held to extend to any state law claim, contract or tort, that arises from the terms of a collective bargaining agreement. Id. In order to survive preemption, a state tort claim must be "independent" of the collective bargaining agreement. Id.

To determine whether a state law claim is sufficiently independent to survive preemption, the Sixth Circuit has adopted a two-step inquiry. Mattis, 355 F.3d at 906. A state law claim is preempted if either: (1) the rights claimed by the plaintiff were created by the collective bargaining agreement rather than state law; or (2) resolving the state law claim would require interpretation of the terms of the collective bargaining agreement. Id.; Paluda v. Thyssenkrupp Budd Co., 303 Fed. Appx. 305, 308 (6th Cir. Dec. 16, 2008). In applying the second inquiry, the court considers whether the plaintiff can prove the elements of his state law claim without contract interpretation. Id. If resolution of the state law claim is "substantially dependent" on an analysis of the terms of the collective bargaining agreement, or "inextricably intertwined" with it, the claim is preempted by Section 301. Allis Chalmers, 471 U.S. at 220. When the meaning of a contract term is not in dispute, however, the mere consultation of the collective bargaining agreement in the course of resolving a state law claim will not result in preemption. Livadas v. Bradshaw, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

Plaintiff's first cause of action, "outrageous conduct," requires that he establish the following elements under Tennessee law: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004); Oates v. Chattanooga Publishing Co., 205 S.W.3d 418, 428

4

(Tenn. Ct. App. 2006).[2]

The Complaint alleges that the Defendant committed the tort of outrageous conduct by:

> . . . withholding the accurate and true knowledge and information concerning the tenuous nature and fragile condition of Plaintiff Givens' left knee pathology and by electing to risk serious and permanent injury to him without his advice and knowledge, or even so much as discussing his condition with him. Rather, he was urged to enter the arena of professional football wherein even the most healthy players are susceptible to injury and damage and where the Plaintiff, at the very least, had a right to make his own decision as to whether to seek further corrective medical treatment as opposed to risking his entire professional career on a pre-existing condition unknown to him, unlike the Defendant which had a complete and substantiated knowledge of his true condition.

(Complaint, at ¶ 13).

The CBA at issue in this case states that it "represents the complete understanding of the parties on all subjects covered herein," and defines the parties as all "present and future employer member clubs of the National Football League" and "the National Football League Players Association" which includes "present and future employee players in the NFL" and specifically "[a]ll professional football players who have been previously employed by a member club of the National Football League who are seeking employment with an NFL Club." (Docket No. 6-1, at p. 2, 3 of 37).[3] The Complaint alleges that the conduct complained of took

---

[2] Although Plaintiff has stated them separately in his Complaint, under Tennessee law, intentional infliction of emotional distress and outrageous conduct are treated as the same tort claim. Oates, 205 S.W.3d at 428.

[3] Plaintiff referred to his Player Contract and the CBA with the Defendant in his Complaint, and attached the Player Contract as an exhibit thereto. (Docket No. 1). Plaintiff did not attach the CBA, but the Defendant has filed the Agreement as an exhibit to its Motion To Dismiss. (Docket No. 6-1). The Sixth Circuit has held that documents that a defendant attaches to a motion to dismiss, which are referred to in the plaintiff's complaint and are central to his claim, may be considered as part of the pleadings in resolving a motion to dismiss. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 296-97 (6th Cir. 2008). Thus, the Court may consider the terms of the CBA in resolving the pending Motion without converting the motion to one for summary judgment.

5

place while the Plaintiff, who had played for the New England Patriots NFL Club, was in contract negotiations to play for the Defendant. (Complaint, at ¶¶ 1, 4, 5). Thus, at the time of the conduct complained of, both the Plaintiff and the Defendant were parties to the CBA.

Article XLIV of the CBA, entitled "Players' Right To Medical Care And Treatment," specifically provides as follows:

> *Section 1*. **Club Physician**: Each Club will have a board-certified orthopedic surgeon as one of its Club physicians. The cost of medical services rendered by Club physicians will be the responsibility of the respective Clubs. If a Club physician advises a coach or other Club representative of a player's physical condition which adversely affects the player's performance or health, the physician will also advise the player. If such condition could be significantly aggravated by continued performance, the physician will advise the player of such fact in writing before the player is again allowed to perform on-field activity.

(Docket No. 6-1, at p. 21 of 37).

The Court concludes that a determination of whether the Defendant's failure to advise the Plaintiff of the result of the orthopedic surgeon's examination is "tolerated by a civilized society" would require consultation and interpretation of the terms of the CBA governing the relationship among the club, the player and the physician. The questions raised by the Complaint, such as whether a physician's failure to advise a player of his medical condition should be imputed to the club or whether the club has a duty independent of the physician to advise a player of his medical condition, are "inextricably intertwined" with the provisions of the CBA. See Sherwin v. Indianapolis Colts, Inc., 752 F.Supp. 1172, 1177-79 (N. D. N.Y. 1990)(Former player's tort claims based on allegation that team intentionally withheld information regarding true nature of injury are preempted because they are created by or are substantially dependent on CBA clause requiring physician to advise player of such information); Williams v. National Football League, 582 F.3d 863, 881-82 (8th Cir.

6

2009)(Former player's tort claims arising from NFL's failure to warn plaintiffs that supplement contained banned substance are preempted because duty to provide warning and outrageousness of the NFL's conduct "cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the Policy.").

The Plaintiff argues that the conduct complained of occurred before he signed his Player Contract, which specifically incorporated the CBA, with the Defendant. Plaintiff has not explained, however, why he, as a member of the Players' Union, was not already a party to the CBA before he signed the Player Contract with the Defendant.

Plaintiff's second cause of action, negligent infliction of emotional or physical injury, requires the plaintiff to establish the elements of a general negligence claim: (1) duty; (2) breach of duty; (3) injury or loss; (4) causation in fact; and (5) proximate causation. Lourcey, 146 S.W.3d at 52.

As with the outrageous conduct claim, the Court concludes that the negligence claims also are preempted. Any duty the Defendant had to advise the Plaintiff of the results of his medical examination was either created by the CBA, or is inextricably intertwined with the CBA. See Sherwin, supra; Williams, supra; Jeffers v. E'Alessandro, 681 S.E.2d 405, 412-13 (N.C. Ct. App. 2009)(Negligent retention of team physician arises out of duties imposed by Article XLIV of the CBA, as court finds that "[w]ithout the CBA, the Carolina Panthers would have no obligation to have a team physician at all.").

Finally, Plaintiff asserts a cause of action for "the legal wrong, whether styled as quasi contract or tort, of performing its contractual obligations in bad faith." (Complaint, at ¶ 15). The Plaintiff argues that this claim is a tort claim and that its resolution does not require

7

interpretation of the CBA.

Under Tennessee law, there is implied in every contract a duty of good faith and fair dealing. See, e.g., Wallace v. National Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996). The duty does not apply, however, to the formation of the contract, and does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties. Id., at 687. The Tennessee Court of Appeals has specifically held that the duty of good faith does not stand alone as an independent tort: "Such claim must be grounded in the bad faith refusal of a party to comply with an agreement which establishes its duties." Oak Ridge Precision Industries, Inc. v. First Tennessee Bank National Ass'n, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992). Thus, Plaintiff's cause of action for bad faith is based on, or necessarily requires the interpretation of, the terms of the CBA. As such, the claim is preempted.

In sum, all Plaintiff's claims are preempted under Section 301 because they are not sufficiently independent of the terms of the CBA. The Supreme Court has held that because preempted claims must first be presented through the arbitration procedure established in a collective bargaining agreement, those claims should be dismissed. Allis-Chalmers, 105 S.Ct. at 219-20 ("This complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement, . . . or dismissed as pre-empted by § 301.") Accordingly, Plaintiff's claims are dismissed.

As the Court has concluded that Plaintiff's claims should be dismissed on preemption grounds, it is unnecessary to consider the other arguments raised in the Defendant's Motion To Dismiss.

IV. Conclusion

8

For the reasons set forth herein, the Defendant's Motion To Dismiss (Docket No. 6) is granted, and this case is dismissed.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE